

Neufeld Scheck & Brustin, LLP

Tel: [212] 965-9081   99 Hudson Street, 8th Floor
Fax: [212] 965-9084   New York, New York 10013
                      nsbcivilrights.com

September 9, 2019

Honorable Judith C. McCarthy
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10606

      Re:  *DiPippo v. County of Putnam*, 17-cv-7948 (NSR) (JCM)

Dear Judge McCarthy:

      Plaintiff Anthony DiPippo seeks a conference concerning witness Denise Rose's recent admissions to Putnam County prosecutor Larry Glasser that she committed perjury at her deposition regarding what she purportedly saw on the night of the alleged crimes. Rose, the prosecution's key witness at DiPippo's criminal trials, admitted to Glasser that she deliberately and falsely testified that DiPippo pointed a gun in her face to threaten her on the night of the purported crimes and later asked her to help dispose of the weapon.

      Plaintiff seeks discovery on two fronts. First, Plaintiff seeks leave for a second deposition of Rose. Now that Rose had admitted that the gun accusation was a deliberate lie—and not the product of confusion or a faulty memory—Plaintiff will question her about the circumstances surrounding her *admitted* perjury and the many other obvious falsehoods in her deposition testimony. Plaintiff is also entitled to discovery into Rose's communications with Defendants and Glasser to uncover whether there is a broader civil rights conspiracy at play—and whether that conspiracy included DiPippo's 2016 prosecution. Because Rose is a difficult witness who repeatedly refused to answer questions at her first deposition, requiring the Court's intervention, Plaintiff respectfully requests that the Court preside over the deposition, by video if necessary.

      Second, Plaintiff seeks work product concerning Glasser's interview or interviews with Rose and his subsequent discussions of those interviews with the Putnam County District Attorney. Glasser prosecuted DiPippo in 2016 and is currently prosecuting codefendant Andrew Krivak based on Rose's false testimony. After Krivak's counsel sought to expand the scope of an ongoing CPL 440 proceeding to include Rose's contradictory deposition testimony as a ground for relief, Glasser traveled to Florida to re-interview Rose concerning that testimony. Rose readily admitted that her testimony about the gun—which spanned pages and included numerous details volunteered by Rose—was a deliberate lie. Despite ongoing criminal proceedings against Krivak, Glasser did not disclose Rose's perjury admission to Krivak or his attorneys—in violation of his obligations as a prosecutor. Nor did Glasser or anybody at his office, which is under subpoena in this case, contact Plaintiff's counsel to inform us of Rose's admission. Glasser now asserts work product and deliberative process privilege over his Rose interview materials, but he waived any privilege with self-serving statements at his deposition and cannot come close to justifying withholding this material. Plaintiff unquestionably has a substantial need for the

work product—impeachment evidence, evidence of Rose's fraud against the Court, and evidence of any possible civil rights conspiracy between Rose and the Putnam County District Attorney's Office or Sheriff's Department. Concealing Rose's admitted perjury is not a permissible use of either privilege.

**Rose, the only purported eyewitness and by all accounts the keystone of the prosecution against DiPippo, told multiple outright lies at her deposition.**

As Defendants and two trial prosecutors have testified, Rose was the linchpin of the prosecution against DiPippo—her statement was the only evidence implicating him in the rape and murder of a 12-year-old girl, crimes he did not commit. Without Rose, Defendants admit, there was no probable cause to prosecute DiPippo. But Rose's police statements—and later trial testimony—were completely fabricated; none of the events she described ever happened. Rose has admitted in deposition testimony, and Plaintiff will prove at trial, that Defendants Castaldo and Quick fed her details of the crime known only to the police to make her statement sound reliable. Unsurprisingly, Rose's testimony at four criminal trials (so far) has been wildly inconsistent and implausible—because the events she described never happened.

Questioned at her deposition, Rose piled on additional inconsistencies and outright lies. Outrageously, she claimed for the first time that DiPippo threatened her at gunpoint on the night of the purported crimes and later asked her to help dispose of the gun. She volunteered details of the encounter, including a description of the gun, which she claimed she would never forget. As Defendants admitted, Rose had never mentioned a gun before in any police statement or trial testimony; it was invented on the fly during the deposition. And this was only one of many falsehoods Rose volunteered. For example:

- Rose understood that one question in the case is why she waited more than a year and half to tell police about DiPippo's purported crimes despite many opportunities to do so. At her deposition, she testified that she had intended to use Krivak's van to escape the purported crime scene while Krivak and DiPippo were disposing of the body in the woods—but she could not because the van's keys were not in the ignition. Ex. A at 215–16. She later admitted that she had lied—the keys had been in the ignition—and gave an entirely different reason why she did not drive away. *Id.* at 227–30.

- Rose claimed that her initial plan was to drive home immediately, wake her father up, and tell him the victim had been murdered and was in the woods, but she could not because the keys were not in the ignition (a lie). When asked why she didn't then tell her father after she was driven home thirty minutes later, she claimed it was because he was sleeping. When asked why she did not tell him in the morning, she testified that she could not because he had left. *Id.* at 218–22. Instead, she waited a year and a half before reporting the crimes to anyone.

- Rose claimed she felt threatened by DiPippo and Krivak after the murder and admitted that she knew the best way to protect herself would be to tell the police about the crimes so that Krivak and DiPippo would be arrested. But she claimed that she could not go to

2

the police because DiPippo and Krivak were with her at all times after the purported crimes. *Id.* at 221, 223. She later admitted that in fact for hours each night, she was at home without DiPippo or Krivak present. When asked why she didn't report the crimes during the evenings when DiPippo and Krivak weren't with her, she testified that she hadn't called the police because she was too tired after working for nine hours each day. *Id.* at 225.

- Despite Rose's prior trial testimony that she had a longstanding and close relationship with DiPippo after the purported murder, including a consensual sexual relationship, Rose claimed at her deposition that she never had sex with DiPippo. *Id.* at 152–53.

These and other lies eviscerate what remains of Rose's credibility.

**ADA Glasser learns of Rose's perjury and takes no action.**

ADA Glasser, the prosecutor in DiPippo's 2016 trial and the still-pending Krivak prosecution, testified that he traveled to Florida to re-interview Rose after Krivak's defense counsel brought out the inconsistencies in Rose's deposition in state court. Glasser prepared for the re-interview by carefully reading Rose's deposition and marking several inconsistencies. Ex. B at 326. When he asked Rose about her gun testimony, she admitted that she deliberately lied under oath to prevent DiPippo from prevailing in this lawsuit. *Id.* at 210–11. In other words, as Glasser hesitatingly admitted, she committed perjury. *Id.* at 211.

At a 440 hearing after that interview, Krivak's defense counsel sought to include Rose's deposition inconsistencies as an additional ground for relief. *Id.* at 248–51. Glasser, however, opposed the request without disclosing Rose's perjury admissions to Krivak's counsel or the 440 court. Worse, after the court granted Krivak's 440 motion, Glasser argued in opposition to Krivak's bail application that the evidence against him was overwhelming—without mentioning that the prosecution's star witness had just confessed to perjury. When Krivak's counsel replied that Rose was a known liar who had repeatedly been arrested, Glasser accused her of slandering Rose. *Id.* at 274–75. Glasser even admitted in his deposition that he may still use Rose as a witness at Krivak's retrial. Ex. B at 258–59. The failure to disclose Rose's perjury admission during Krivak's ongoing 440 proceeding was a violation of Glasser's obligations as a prosecutor, a fact conceded by former Putnam County prosecutor Christopher York at his deposition. Ex. C at 176–77. Neither Glasser nor anybody else from the Putnam County District Attorney's Office contacted Plaintiff's counsel to inform us that Rose had admitted to perjury in our federal deposition.

At his deposition, Glasser claimed that either he or an investigator—he could not remember which—took notes of his meeting with Rose but that he had not reviewed them in preparation for his testimony. *Id.* at 212–15, 400–01. Accordingly, he claimed, he had little memory of the meeting. *Id.* at 399. He claimed that he did not think he asked Rose about any of the other lies in her testimony but could not remember for sure. *Id.* at 341. He refused to answer question regarding his office's appraisal of Rose's admissions or any discussions with the district

attorney. *Id.* at 319–20. He did, however, assert his belief that Rose's perjury did not exculpate DiPippo because she continued to claim that he was guilty. *Id.* at 262–63.

**Rose should be compelled to sit for a second deposition regarding her perjury.**

Rose's admission that her statement about the gun was a deliberate lie suggests that the other falsehoods in her testimony were also deliberate lies. Plaintiff should be given a second opportunity to depose Rose for up to seven hours to question her about those falsehoods. Rose is also now a critical witness of Glasser's possible participation in an ongoing civil rights conspiracy to cover up the misconduct alleged in this case. Plaintiff is entitled to take discovery for possible sanctions against Rose, including for a jury instruction regarding her perjury, and to uncover further evidence of Rose's and Glasser's participation in covering up the misconduct in this case. Plaintiff has a good faith basis to believe that such discovery may warrant adding Rose and/or Glasser as Defendants in this action.

Rose was a difficult deposition witness who repeatedly refused to answer questions, threatened Plaintiff's counsel, and was verbally abusive. *See* Ex. A at 201–03, 254–55. Her obstructionism required a call to the Court. *Id.* at 256–57. To avoid further obstruction, Plaintiff respectfully requests that the Court preside over the deposition. Plaintiff does not believe that Rose, a Florida resident, can be compelled to attend a deposition in the SDNY courthouse, and would appreciate any guidance from the Court as to how to conduct an out-of-state deposition under Court supervision—whether by videoconference or other means.

**Glasser should be compelled to disclose work product related to his interview or interviews with Rose, including his discussions with the Putnam County District Attorney.**

To invoke the work product doctrine, the party seeking protection "has the burden of showing that the protection exists and that it has not been waived." *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002). The work product is waived when it is disclosed in a manner that "substantially or materially increases the likelihood that an adversary will obtain the information." *Id.* at 170.

Courts consistently recognize a broad waiver of work product to avoid the "strategic and manipulative use of the attorney-client privilege and work product doctrine." *Gruss v. Zwirn*, 09-cv-6441 (PGG)(MHD), 2013 WL 3481350, at *11 (S.D.N.Y. July 10, 2013). The work-product doctrine is waived when an adversary "seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent an opponent from challenging the assertion." *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 103 (S.D.N.Y. 2000) (internal quotation marks and citation omitted). Attorneys cannot disclose only the most favorable (or, in this case, least harmful) work product while "refusing to produce the witness summaries and notes from which the favorable excerpts were drawn." *Gruss*, 2013 WL 3481350, at *11. In other words, an attorney cannot "invoke the privilege as to the communications whose confidentiality he has already compromised for his own benefit." *Id.* (quoting *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981)).

Glasser partially disclosed not only Rose's statements but also his own mental impressions concerning their import. He testified, for example, that he is entitled to rely on Rose as a witness because her reason for perjuring herself was the least exculpatory reason he could think of. Ex. B at 262–63, 328. He has therefore waived any work product protection. *See Gruss*, 2013 WL 3481350, at *11; *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears."). After claiming that Rose's perjury did not exculpate DiPippo, Glasser cannot use the privilege to shield scrutiny of his mental impressions. Rather, Plaintiff is entitled to examine Glasser's notes—and communications with his colleagues—to determine both the extent of Rose's admissions and to probe Glasser's self-serving assertion that her perjury was not exculpatory.

Glasser waived any work product protection over materials related to Rose, but Plaintiffs would be entitled to these documents anyway. "[T]o the extent the work product doctrine applies at all, the documents are subject to disclosure on a demonstration of substantial need and undue hardship." *Abdell v. City of New York*, 05-cv-8453 (KMK) (JCF), 2006 WL 2664313, at *7 (S.D.N.Y. Sept. 14, 2006). Here, Plaintiff can show both, and no contravening public policy would be served by concealing Rose's admitted perjury.

There is no question Plaintiff has a substantial need for the purported work product—it documents Rose's *admissions to perjury in this case*.[1] Plaintiff is entitled to any and all evidence showing Rose's intent and willingness to lie in this federal proceeding, including any statements that Glasser took but could not remember at the time of his deposition. This discovery is necessary not only to examine the extent of Rose's perjury but also to probe Rose and Glasser's participation in a conspiracy to cover up civil rights abuses—including whether to add them as Defendants. Rose is not an alternative source for the information; because she has *already* admitted to perjury, Plaintiff cannot rely on her self-serving denials. Nor is there any other source for the evidence—Glasser testified that he and his investigator were the only two other people present for the interview. Finally, there is no policy justification for withholding the documents. Unless corrected, Rose's perjury is an ongoing federal crime, and the work product doctrine was not designed to perpetuate a fraud on the Court. *See, e.g.*, *In re John Doe, Inc.*, 13 F.3d 633, 635 (2d Cir. 1994) (holding that communications concerning an attempt to suborn perjury were not protected by the attorney-client privilege).

Plaintiff is also entitled to communications between Glasser and District Attorney Robert Tendy concerning Rose's admissions. The Putnam County District Attorney's Office (PCDA) is under a subpoena to provide any and all documents relating to witness interviews in this case. The office was accordingly under an obligation to either disclose to Plaintiff any statements made by Rose or to promptly provide a privilege log documenting their claim of privilege. Because the PCDA did neither, Plaintiff is entitled to know "what did [Tendy] know, and when

---

[1] Plaintiff has also requested Glasser's work product from the 2016 trial to probe his involvement in the civil rights conspiracy alleged in Plaintiff's complaint. He is unquestionably entitled to this material as well. *See, e.g.*, *Harris v. United States*, 1998 WL 26187, at *2 (S.D.N.Y. Jan. 26, 1998) ) (holding that "[w]here the activities of counsel…form the very basis of a present claim for relief, courts routinely find the need for production of counsel's work product compelling" (internal quotation marks omitted)).

did [he] know it" if a sanctions motion becomes necessary. *See Harris v. United States*, 1998 WL 26187, at *2–3.[2]

### **Conclusion**

Plaintiff respectfully seeks an order requiring Denise Rose to appear in federal court for a second seven-hour deposition in the presence of a magistrate judge and an order instructing Glasser to produce his work product related to Rose.

Respectfully,
/s/ Rick Sawyer
Rick Sawyer
*Attorney for Plaintiff*

CC: All counsel of record, via ECF

---

[2] Glasser also asserts the deliberative process privilege, but that privilege does not protect "factual and investigative information" like that sought here. *Charles v. City of New York*, 11-cv-0980, 2011 WL 5838478, at *2 (E.D.N.Y. Nov. 18, 2011). Moreover, the privilege "is a qualified one which may be overcome upon a showing that the adverse party's need for disclosure outweighs the agency's interest in confidentiality." *Herman v. Crescent Pub. Grp., Inc.*, 00-cv-1665 (SAS), 2000 WL 1371311, at *3 (S.D.N.Y. Sept. 21, 2000). Plaintiff has more than established his need for disclosure here.