# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------x

ANTHONY DiPIPPO,

                    Plaintiff,

        -against-                 Case No.:
                                  17-CV-7948-NSR-JCM
COUNTY OF PUTNAM, ET. AL.,

                    Defendants.

-----------------------------------------x


        DEPOSITION OF ADA LARRY GLASSER, a

non-party witness herein, taken by the Plaintiff,

pursuant to Subpoena, held at the offices of

Portale Randazzo, LLP, 245 Main Street, Suite 340,

White Plains, New York 0601, on Friday, August 16,

2019, at 9:50 o'clock a.m., before Deborah

Moschitto, a Shorthand Reporter and Notary Public

of the State of New York.



```
 1                    L. Glasser
 2        Q.     Okay.  Now, what did Denise Rose
 3   tell you, tell me to the best of your ability
 4   what Denise Rose told you that satisfied your
 5   concerns about her testimony regarding the
 6   gun?
 7        A.     Well, it wasn't just what she
 8   told me, but what she did tell me --
 9        Q.     Let's start with what she told
10   you.
11        A.     Okay.  I'm not quoting her, but
12   what she told me, in effect, was that there
13   was no gun, and she said it during the
14   deposition out of frustration and, again, to
15   enhance the likelihood that Anthony DiPippo
16   did not recover any money in this lawsuit
17   which she thought was an outrage.
18        Q.     So she told you that she said
19   there was a gun at the deposition knowing
20   that there was no gun in order to enhance the
21   possibility that Anthony DiPippo would lose
22   the case and not recover money; correct, in
23   substance?
24        A.     In substance, yes.  And that she
25   was very upset with the attorneys -- attorney
```



1                         L. Glasser

2        Q.      But the other times you

3    interviewed Denise, you were interviewing her

4    as a witness in connection with a

5    prosecution; right?

6        A.      Yes.

7        Q.      And here, as you've told me, you

8    were investigating a troubling admission she

9    made under oath at her deposition which

10   suggested she was not telling the truth;

11   correct?

12       A.      Well --

13       Q.      Here's what I'm getting at:  She

14   admitted to you that she intentionally lied

15   under oath about an important issue, at her

16   deposition.  That's not like every other

17   statement she reported during your meetings

18   with her.  Where did you write it down?

19               MR. RANDAZZO:  Objection.

20       A.      I just said I don't know.  If I

21   wrote it down it would have been on a file on

22   my computer.

23       Q.      But you're not sure whether you

24   wrote it down?

25       A.      I had an investigator with me and



```
 1                     L. Glasser
 2   we may have decided that he would be the one
 3   to document the meeting and take notes.
 4        Q.     So you don't remember, as you sit
 5   here today, when Denise Rose said to you:
 6   Yes -- I understand she didn't use the word
 7   "perjury," but when she said:  Yes, I
 8   intentionally lied under oath about Anthony
 9   DiPippo having a gun to make it less likely
10   that he would win his lawsuit and get money,
11   you're telling me you don't remember whether
12   you wrote that down or whether your
13   investigator wrote that down?
14        A.     Correct.
15             MR. RANDAZZO:  Objection.
16        Q.     And this was approximately six
17   months ago, the key witness in a case you're
18   prosecuting is admitting to perjury and
19   you're not sure today, as you sit here,
20   whether you wrote it down or an investigator
21   wrote it down; correct?
22             MR. RANDAZZO:  Objection.
23        A.     Well, at the time I'm not sure of
24   the status.  You say it was a case I was
25   prosecuting.  I already said I don't know
```



```
 1                      L. Glasser
 2   which one of us wrote it down.
 3        Q.    Is it possible neither of you
 4   wrote it down?
 5        A.    I can't think so.
 6        Q.    Okay.  Because that's a -- you're
 7   an experienced prosecutor, that's a criminal
 8   admission by Denise Rose; you understand
 9   that, right?
10              MR. RANDAZZO:  Objection.
11        A.    Yes.
12        Q.    And so when Denise Rose made that
13   admission to you, tell me every step you took
14   after she made that admission to you to deal
15   with the fact -- to address this criminal
16   admission by the key witness in your case.
17              MR. RANDAZZO:  Objection.
18        A.    I don't understand what you mean
19   by addressing the fact.  I discussed it with
20   her, how and why she said what she said.  My
21   investigator was with me and we discussed it
22   with her.  And for what it's worth, shortly
23   thereafter, I don't know if this is what
24   you're getting at, at the first court
25   appearance we had after Andy Krivak was given
```



1                     L. Glasser

2      whether the claims made in the defendants'

3      written 440 Motion warranted a new trial.

4      There was a Brady claim.   There was a coerced

5      confession claim.   There was the Joe Santoro

6      newly discovered evidence claim.   They were

7      entitled, the 2nd Department ruled, to an

8      evidentiary hearing on the claims in their

9      motion papers.

10          Q.     You understood the judge was

11     going to be sitting there hearing evidence

12     and deciding whether to grant Andy Krivak a

13     new trial; correct?

14          A.     Yes.

15          Q.     You understood that was going to

16     happen; as of February 7th, you knew that

17     that was going to happen?

18          A.     Yes.

19          Q.     Okay.   And yet you knew that Andy

20     Krivak's lawyers, Andy Krivak had very --

21     has -- withdrawn.

22               You knew Andy Krivak's lawyers

23     had already asked to expand the hearing to

24     include allegations of perjury made by Denise

25     Rose, as you've already told me; right?



1                         L. Glasser

2          A.      Yes.

3          Q.      So you knew that if they had --

4    if they knew that Denise Rose had made a

5    criminal admission to you that she had, in

6    fact, committed perjury, they would have

7    tried to use that in any way they could;

8    right?

9                  MR. RANDAZZO:   Objection.

10         Q.      You knew that they would have

11   tried?

12                 MR. RANDAZZO:   Objection.

13         A.      I don't know that.

14         Q.      No?

15         A.      There is a lot of information

16   they had that I thought they would use at the

17   440 Hearing and they didn't.

18         Q.      Sir, sir, listen to me, listen to

19   my questions, remember that you're under

20   oath.

21         A.      Yes.

22         Q.      You knew they had already tried

23   to expand the scope of the hearing to include

24   allegations of perjury by Denise Rose, okay;

25   they were cognisant of that issue clearly



| | |
|---|---|
| 1 | L. Glasser |
| 2 | based on their request; right? |
| 3 | A.    Yes. |
| 4 | Q.    Okay.  You don't think, had they |
| 5 | known that Denise Rose had actually admitted |
| 6 | committing perjury to you they would have |
| 7 | tried to use that during the 440 proceedings? |
| 8 | MR. RANDAZZO:  Objection.  Asked |
| 9 | and answered six times, at least.  You can |
| 10 | answer one more time.  I ask you to move on |
| 11 | after that. |
| 12 | A.    I think it was made clear to them |
| 13 | it would be improper to use in the 440 |
| 14 | proceeding.  Whether they pursued it |
| 15 | separately, I would think a zealous advocate |
| 16 | would have done so, but I don't know what |
| 17 | Adele Bernhard would have done. |
| 18 | Q.    Are you suggesting Adele Bernhard |
| 19 | was not zealous enough to use the admission |
| 20 | to perjury by Denise Rose during the 440 |
| 21 | proceedings even though she had already asked |
| 22 | the court to expand the hearing to include |
| 23 | it? |
| 24 | MR. RANDAZZO:  Objection. |
| 25 | A.    I'm not going to comment on |



LARRY GLASSER, ADA                                August 16, 2019
DiPPO vs PUTNAM                                             251

```
 1                     L. Glasser
 2   Adele's advocacy, but I think it's both
 3   procedurally and substantively improper in
 4   the 440 context.  I think I've said that many
 5   times.
 6        Q.    You didn't disclose it because
 7   you didn't want the judge to know that Denise
 8   Rose had lied and committed perjury; right?
 9               MR. RANDAZZO:  Objection.
10        A.    That's not true.  I thought that
11   was the assumption that everybody was making.
12   Obviously these two accounts are mutually
13   incompatible so it is very clear that she
14   testified untruthfully under oath at least
15   once.  I think that's understood by
16   everybody, unless she fell and hit her head
17   and it affected her memory of what occurred
18   in 1994, there is no other explanation.
19               MS. FREUDENBERGER:  All right,
20   let's take a quick break.
21               (Recess taken.)
22               MS. FREUDENBERGER:  Back on the
23   record.
24        Q.    When Denise Rose admitted to you
25   that she had committed perjury at her
```



```
 1                     L. Glasser
 2              MR. RANDAZZO:  Objection.
 3        A.    Yes.
 4        Q.    Even though she made a
 5   criminality admission to committing perjury
 6   about this case to you directly?
 7              MR. RANDAZZO:  Objection.
 8        A.    I think I already answered.
 9        Q.    Okay.  Now, once -- by the way,
10   why don't you think you have an obligation to
11   report that crime?
12        A.    I don't know why you think I do.
13        Q.    Well, you're not allowed to cover
14   up crimes.
15        A.    I did not cover up a crime.
16              MR. RANDAZZO:  Objection.
17        Q.    Well, by hearing an admission to
18   a crime and not disclosing it or referring it
19   to any law enforcement agency, you are, by
20   definition, assisting in the coverup of a
21   crime.
22              MR. RANDAZZO:  Objection.
23        Q.    Do you understand that?
24              MR. RANDAZZO:  Objection.
25        A.    I disagree with that strongly.
```



```
 1                    L. Glasser
 2        Q.    Let's go back to the -- well,
 3   before we do:  You did report her admission
 4   to District Attorney Tendy, though; correct?
 5        A.    We had discussed my trip to
 6   Florida.
 7        Q.    Well, when you discussed your
 8   trip to Florida, did you tell District
 9   Attorney Tendy that Denise Rose had admitted
10   to intentionally lying about what she saw in
11   the van that night, to you?
12        A.    As I said before, I think that is
13   privileged deliberative process and work
14   product, me discussing with other attorneys
15   in my office that situation.
16        Q.    All right.  After Denise Rose
17   admitted to you that she had intentionally
18   lied about the gun testimony, I take it you
19   questioned her about all of the other
20   inconsistencies in her deposition testimony;
21   correct?
22             MR. RANDAZZO:  Objection.
23        A.    I don't know what you mean by all
24   of her other inconsistencies, but we talked
25   about her deposition testimony, her trial
```



```
 1                    L. Glasser
 2   of the Federal crime.  I would assume it
 3   doesn't.
 4        Q.    Okay.  And as you've already told
 5   me, you never reported that crime to anyone
 6   at any law enforcement agencies?
 7              MR. RANDAZZO:  Objection.  Asked
 8   and answered.  You can answer.
 9        A.    Not in Florida, no.
10        Q.    And not to any Federal law
11   enforcement agencies; right?
12        A.    Correct.
13        Q.    And tell me why you didn't think
14   you had to.
15              MR. RANDAZZO:  Objection.  You
16   can answer.
17        A.    Because I didn't -- I didn't
18   think I had to, and I think, as I said
19   before, her explanation was actually the
20   least exculpatory explanation she could have
21   had.  I mean it would have been a bigger
22   issue if she had said that the deposition
23   testimony was true and all of her trial
24   testimony throughout the years against
25   Anthony DiPippo and Andrew Krivak was false,
```



 1                         L. Glasser

 2      and it would have been a bigger exculpatory

 3      issue if she told me that today, in 2019, she

 4      truly did believe or remember that a gun was

 5      used because that would called her competency

 6      into question.

 7                  So having --

 8          Q.      That's a bigger issue than her

 9      intentionally lying under oath?

10          A.      As far as the defendants'

11      innocence, yes, or guilt, yes.

12          Q.      What did you do to investigate

13      whether or not you had an obligation to

14      report her crime to any law enforcement

15      agencies?

16          A.      I don't know that you can say

17      that I investigated it.

18          Q.      You did not; right?

19          A.      No, I did not.

20          Q.      As a prosecutor, are you allowed

21      to dismiss, just not pursue it when someone

22      has committed a crime, admits they're

23      committing a crime, that they had a good

24      reason for it?

25                  MR. RANDAZZO:  Objection.



1                          L. Glasser

2          A.      Okay.

3          Q.      Clearly, one of the arguments

4    that Ms. Bernhard is backing here, that Andy

5    Krivak's lawyer is making hear, that Denise

6    Rose has serious credibility issues; correct?

7    Do you agree with that?

8          A.      I agree she made that argument.

9          Q.      Right.  And you were in court and

10   you heard that argument; right?

11         A.      Yes.

12         Q.      And then the court gave you an

13   opportunity to respond, which you did on the

14   next page?

15         A.      Yes.

16         Q.      Okay.  And you say in response

17   that, "Andy Krivak's lawyer's allegations

18   about Denise Rose would be slanderous if not

19   made in court, that she continues to be

20   arrested and accrue a criminal record, and

21   the allegations, included allegations about

22   Denise Rose's credibility; correct?"  Those

23   are some of the allegations you're responding

24   to when you cite slander, were you not in

25   court; correct?



```
 1                    L. Glasser

 2        A.     I was responding to her saying as

 3   a reference someone who continues to get

 4   arrested and develop a criminal record.

 5        Q.     So when you said her allegations

 6   were slanderous you were only referring to

 7   the criminal record part of that, you weren't

 8   referring to the credibility accusation; is

 9   that what you're saying?

10        A.     Correct, that is what definitely

11   peaks my -- caught my attention, and that I

12   was directly responding to, and, as you see,

13   as to the rest of it, I said, second of all,

14   right after that, that there's no evidence of

15   that presented at the hearing.

16        Q.     Sir, I have the transcript in

17   front of me, I can read what you said.

18               By the way, you understood when

19   you made these comments that Denise Rose had

20   gotten arrested in 2015 for resisting arrest

21   and allegation -- the allegations against her

22   were assault while she was drunk, including

23   allegations that she had pushed a cop; right?

24        A.     I knew those were the

25   allegations.  They came out at Anthony
```



```
 1                        L. Glasser
 2    record, tell me the substance -- well, I'm
 3    going to ask some questions now.  The judge
 4    directed me to ask the questions that I'd
 5    like to mark for a ruling as to privilege at
 6    the deposition so I'm going to do that right
 7    now.
 8          Q.     Okay?
 9          A.     Okay.
10          Q.     Tell me everybody whom you
11    discussed Denise Rose's admission that she
12    had intentionally lied under oath at her
13    deposition with after it happened.
14                 MR. RANDAZZO:  Objection, to the
15    extent it calls for or involves the
16    attorney-client privilege or deliberative
17    process or your work product.  Other than
18    that, you can answer.
19                 MS. FREUDENBERGER:  Jim, you can
20    say privilege and we will have an
21    understanding that that encompasses all of
22    the privileges that either you or Mr. Glasser
23    has asserted.  That's fine.
24                 MR. RANDAZZO:  All right, thanks.
25          A.     I don't believe I discussed it
```



1                          L. Glasser

2     with anybody other than to whom those

3     privileges would apply.

4          Q.     Who are those individuals?

5                     MR. RANDAZZO:  The names of the

6     people?

7                     MS. FREUDENBERGER:  Yeah.

8                     MR. RANDAZZO:  I think that would

9     still be part of the privilege, the names of

10    the people, so we are going to invoke

11    privilege, as well.

12                    MS. FREUDENBERGER:  Okay.

13         Q.     Describe the substance of those

14    communications.

15                    MR. RANDAZZO:  Objection,

16    privileged.

17         Q.     Was District Attorney Tendy

18    involved in your decision not to disclose the

19    fact of Denise Rose's admission that she lied

20    under oath at her deposition intentionally?

21                    MR. RANDAZZO:  Objection?

22         Q.     To the Krivak defense or to us in

23    the civil case?

24                    MR. RANDAZZO:  Objection,

25    privileged.



```
 1                    L. Glasser
 2    had lied about other things in her
 3    deposition?
 4         A.     She could have.
 5         Q.     Were you concerned about that?
 6    I'll withdraw it.
 7              Did you take any steps to find
 8    out whether she had lied about anything else
 9    in her deposition?
10         A.     Well, the first thing I know I
11    did, although I don't remember the
12    substantive answers as I sit here, is I went
13    through the deposition and I would have sort
14    of mentally flagged anything that was
15    inconsistent with what she said before.
16         Q.     Mentally flagged.  Did you take
17    notes when you were reviewing her deposition?
18         A.     I think I may have used Post-It
19    flags to pages that caught my attention for
20    one reason or another.
21         Q.     And it would have been very easy
22    for you, when you sat down with Denise Rose,
23    to go through your Post-Its or flags and ask
24    her about the inconsistencies you had noted;
25    right?
```



1                          L. Glasser

2     why she did it.

3          Q.      So it was understandable perjury?

4                  MR. RANDAZZO:   Objection.

5          A.      I'm not excusing it, but you

6     asked me to explain what I meant by that.

7                  If she had told me when I saw her

8     in person that the account with a gun was

9     true, then that means instead of testifying

10    untruthfully in one deposition, she would

11    have testified untruthfully in multiple

12    criminal proceedings that did, in fact,

13    directly lead to convictions, and, in fact,

14    which Andrew Krivak was incarcerated for.

15                 If she had told me his trial

16    testimony was perjured, that would have been

17    a much more serious issue than her telling me

18    her testimony in a collateral proceeding was

19    intentionally untrue.

20                 I want to be clear, I'm not

21    excusing either one of them, but between

22    those two, this was clearly the lesser of two

23    evils, so to speak.  And, as I said before,

24    if she had somehow said to me now that her

25    honest recollection was that there was a gun,



```
 1                    L. Glasser
 2    there was going to be a new trial, I would
 3    spend much more time with her.
 4         Q.    So after you asked her about the
 5    gun lie, you just stopped?
 6         A.    No, that's not what I said.
 7         Q.    You stopped asking her about lies
 8    in her deposition?
 9              MR. RANDAZZO:  Objection.
10         A.    I don't remember if I asked her
11    about any other specific incidents in her
12    deposition.
13         Q.    I'm not talking about specific
14    incidents.  I'm talking about lies under
15    oath.
16         A.    I don't think I asked her about
17    any other specific lies that I noticed in her
18    deposition.  I might have.  I don't remember.
19         Q.    Why not?
20              MR. RANDAZZO:  Objection.
21         A.    Because what I was focusing on is
22    on her actually being a witness to the
23    incidents and her reports to the police.
24              And the reason she told me she
25    lied about the gun, that explanation, I took
```



```
 1                    L. Glasser

 2   weren't credible under oath at her deposition

 3   and you chose not to ask her about them?

 4              MR. RANDAZZO:  Objection.

 5       Q.    Right?

 6              MR. RANDAZZO:  Objection.

 7       A.    I don't recall if I asked her

 8   about them.  Some of these reasons she had

 9   said before, either to me or at trial.

10       Q.    Mr. Glasser, just talk about you.

11   It was six months ago and you are 43 years

12   old and you don't have any memory problems,

13   do you?

14       A.    No.

15       Q.    If you had talked with Denise

16   Rose about -- is it possible you talked to

17   Denise Rose about this inconsistency and you

18   just forgot about it?

19       A.    As I sit here today, I don't

20   remember everything we talked about.  We

21   spoke for a few hours that day.  I don't

22   remember every topic of the deposition we

23   talked about.  I don't believe we talked

24   about this, but I'm not a hundred percent

25   certain.
```



```
 1                    L. Glasser
 2       Q.    Did you review your notes before
 3  coming here --
 4       A.    No.
 5       Q.    -- of your interview with Denise
 6  Rose?
 7       A.    No.
 8       Q.    No.  Why not?
 9       A.    I didn't think I should.
10       Q.    Why?
11       A.    I didn't know what you were going
12  to ask me about.  I didn't -- I just didn't.
13       Q.    You thought I might not ask about
14  a question that called for you to tell me
15  about that admission from Denise Rose and you
16  were worried that if you reviewed your notes
17  and I asked you what you reviewed and you
18  told me you reviewed your notes, I would ask
19  you what's in them?
20       A.    That's absolutely untrue because
21  I assume any notes that were taken -- no,
22  that's just not true.
23       Q.    That's just not true?
24       A.    No.
25       Q.    You didn't intentionally not
```



 1                    L. Glasser

 2   review your notes because you were hoping you

 3   wouldn't have to tell me about the admission

 4   to perjury you elicited from Denise Rose?

 5              MR. RANDAZZO:   Objection.

 6        A.    I wasn't hoping anything other

 7   than we would have finished a long time ago.

 8              No, I didn't think you were going

 9   to ask me about things that occurred three

10   years after your client's acquittal, to be

11   honest.

12        Q.    All right.

13              So you didn't expect to have to

14   testify to Denise Rose's perjury admission to

15   you; right?

16        A.    Correct.

17        Q.    You did not think that would come

18   up today; correct?

19        A.    Correct.

20        Q.    You talked earlier about

21   reorganizing the file?

22        A.    Yes.

23        Q.    And some of the things in the

24   files are e-mails from you, correct; e-mails

25   from you to witnesses, et cetera, and when



1

2                    C E R T I F I C A T E

3

4   STATE OF NEW YORK     )
                          )          ss:
5   COUNTY OF QUEENS      )

6

7                  I, DEBORAH MOSCHITTO a Shorthand

8   Reporter and Notary Public within and for the

9   State of New York, do hereby certify:
10               That the within is a true and
11  accurate transcript of the testimony taken on the
12  16th of August, 2019.
13               I further certify that I am not
14  related to any of the parties to the proceeding by
15  blood or marriage, and that I am in no way
16  interested in the outcome of this matter.
17               IN WITNESS WHEREOF, I have hereunto
18  set my hand this 22nd day of August, 2019.
19
20                        DEBORAH MOSCHITTO
21
22
23
24
25

